IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JONATHAN CROMP,

                    Petitioner,                No. S:08-cv-1822 JAM KJN P

    vs.

KEN CLARK, Warden,

                    Respondent.         <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding without counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 conviction on multiple counts of child molestation. Petitioner was sentenced to 180 years in prison. Petitioner raises four claims: (1) evidence of petitioner's prior sexual offense was improperly admitted to prove predisposition; (2) the use of jury instruction CALCRIM No. 1191 violated due process; (3) petitioner's sentence violates the Eighth Amendment; and (4) petitioner's constitutional rights were denied by the imposition of consecutive sentences without benefit of a jury trial. After

////

////

////

1

1   careful review of the record, this court concludes that the petition should be denied.[1]

2   II.  <u>Procedural History</u>

3            On April 5, 2006, petitioner was convicted by a jury of six counts of lewd acts

4   with a child under the age of fourteen years, in violation of California Penal Code § 288(a).

5   (Clerk's Transcript ("CT") at 210-13; 216-21.)  The jury also found that petitioner had

6   committed the charged offenses against multiple victims, California Penal Code § 667.61(e)(5).

7   (CT at 115-21, 123.)  After petitioner waived his right to a jury trial on the prior conviction

8   allegation (1 Reporter's Transcript ("RT") at 31-32, 59-60), the court found petitioner had

9   previously been convicted of a serious or violent felony within the meaning of California Penal

10   Code § 1170.12.  (CT at 123.)  On each count, petitioner was sentenced to serve thirty years to

11   life in state prison (15 years to life doubled pursuant to California Penal Code § 1170.12); and

12   the court ordered petitioner to serve each sentence consecutively to the other.[2]  (CT 210-13; 216-

13   21.)  Petitioner is therefore serving an aggregate 180 year term in state prison.  (<u>Id.</u>)

14            On April 5, 2006, petitioner filed a timely appeal in the California Court of

15   Appeal, Third Appellate District.  (CT at 214.)  The Court of Appeal affirmed petitioner's

16   conviction and sentence on July 17, 2007.  <u>People v. Cromp</u>, 153 Cal.App.4th 476 (Cal. 3d

17   2007); Respondent's Lodged Document ("LD") 1.)

18            Petitioner filed a petition for rehearing (LD 2), which was denied on August 14,

19   2007 (LD 3).

20            Petitioner filed a petition for review in the California Supreme Court (LD 4),

21

22       [1] By order filed April 8, 2010, petitioner was granted 21 days in which to file a reply to

23   respondent's answer.  (Dkt. No. 25.)  On May 24, 2010, in response to petitioner's motion for
extension of time to file an amended petition, petitioner was granted 21 days to file a motion to

24   amend and a proposed amended petition.  (Dkt. No. 27.)  Twenty-one days passed, and petitioner
failed to file a motion to amend or a reply to respondent's answer.

25       [2] Petitioner was also ordered to pay a $10,000.00 restitution fine and to make restitution

26   in the amount of $2,758.  (<u>Id.</u>)  Petitioner received presentence custody and conduct credits
totaling 350 days.  (<u>Id.</u>)

1    which was denied on September 25, 2007 (LD 5).

2                    On August 6, 2008, petitioner filed the instant petition.

3    III.  Facts[3]

4                    The opinion of the California Court of Appeal provides the following factual

5    summary:

6               [Petitioner] makes no contention that the evidence was insufficient,
              and, because we find no error, it is unnecessary to engage in a
7               harmless error analysis.  Therefore, we include only the most
              material facts, drawing all reasonable inferences in favor of the
8               judgment.  (See In re James D. (1981) 116 Cal.App.3d 810, 813,
              172 Cal.Rptr. 321.)

9
              The victims, D.B. and J.B., are brothers. At the time of the
10              molestations, D.B. was eight years old and J.B. was four years old.
              [Petitioner] was the live-in boyfriend of Sherry B., J.B.'s paternal
11              grandmother.  Sherry and [petitioner] often went to the home
              where D.B. and J.B. lived.  For a couple of weeks or a month,
12              [petitioner] lived in the same household as the victims.

13              When [petitioner] and D.B. were alone in the residence,
              [petitioner] fondled D.B.'s penis, testicles, and anus, sometimes
14              with [petitioner's] hand and sometimes with his mouth.  This
              happened, at times, when D.B.'s clothes were off, but also
15              happened when he was clothed.  The molestation occurred at least
              four times while [petitioner] was living in the household.  On one
16              occasion, [petitioner] had D.B. touch [petitioner's] penis.

17              D.B. saw [petitioner], in a closet, touching J.B.'s private areas with
              [petitioner's] hand.  J.B.'s clothes were off.  [Petitioner] put his
18              mouth on J.B.'s penis.  [Petitioner] threatened D.B. that, if D.B.
              told anyone, [petitioner] would hurt everyone in the house.  While
19              J.B. was on a couch watching cartoons, on another occasion,
              [petitioner] touched J.B.'s penis.  When J.B.'s mother was gone,
20              [petitioner] directed J.B. into his mother's bedroom and told J.B. to
              take his pants off.  [Petitioner] touched J.B.'s private area.  J.B.'s
21              mother came home and caught [petitioner] in her bedroom.  She
              told him to leave.  J.B. told his counselor that he was touched
22              numerous times in his private areas.

23              [Petitioner] denied molesting the boys. He claimed he was never
              alone with them.

24    _____

25        [3] The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in People v. Cromp, No. C052319 (July 18, 2007), a copy of which was lodged
26    by Respondent as Lodged Document 1 on June 10, 2009.

                                              3

1 | People v. Cromp, 153 Cal.App.4th at 478.

2 | IV.  Standards for a Writ of Habeas Corpus

3 |         An application for a writ of habeas corpus by a person in custody under a

4 | judgment of a state court can be granted only for violations of the Constitution or laws of the

5 | United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

6 | interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

7 | Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

8 |         Federal habeas corpus relief is not available for any claim decided on the merits in

9 | state court proceedings unless the state court's adjudication of the claim:

10 |
11 |     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

12 |
13 |     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

14 | 28 U.S.C. § 2254(d).

15 |         Under section 2254(d)(1), a state court decision is "contrary to" clearly

16 | established United States Supreme Court precedents if it applies a rule that contradicts the

17 | governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

18 | indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

19 | result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06

20 | (2000)).

21 |         Under the  "unreasonable application" clause of section 2254(d)(1), a federal

22 | habeas court may grant the writ if the state court identifies the correct governing legal principle

23 | from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

24 | prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

25 | simply because that court concludes in its independent judgment that the relevant state-court

26 | decision applied clearly established federal law erroneously or incorrectly.  Rather, that

1  application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

2  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

3  question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

4  omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

5  so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

6  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

7          The court looks to the last reasoned state court decision as the basis for the state

8  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

9  decision, "and the state court has denied relief, it may be presumed that the state court

10  adjudicated the claim on the merits in the absence of any indication or state-law procedural

11  principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

12  overcome by a showing that "there is reason to think some other explanation for the state court's

13  decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

14          Where the state court reaches a decision on the merits but provides no reasoning

15  to support its conclusion, the federal court conducts an independent review of the record.

16  "Independent review of the record is not de novo review of the constitutional issue, but rather,

17  the only method by which we can determine whether a silent state court decision is objectively

18  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned

19  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

20  basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must

21  determine what arguments or theories supported or, . . . could have supported, the state court's

22  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

23  arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at

24  786.

25  ////

26  ////

V.  <u>Petitioner's Claims</u>

       A.  <u>Admission of Propensity Evidence</u>

       Petitioner claims evidence of his prior sexual offense was improperly admitted to prove predisposition in violation of his constitutional rights.

       The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> Over [petitioner's] objections based on statute and constitution, the trial court allowed the prosecution to present evidence of a rape [petitioner] committed in 1993.  On appeal, [petitioner] contends the trial court abused its discretion and violated his constitutional due process and fair trial rights.  The contention is without merit.

> The defense and prosecution stipulated that, rather than having the developmentally disabled victim of the prior rape testify, the following stipulation would be read to the jury:

>> "On August 25, 1993, [petitioner] [] had sexual intercourse with Lynn, age 24 at the time, who is developmentally disabled and a client of Far Northern Regional Center.  It is apparent upon meeting Lynn that she is mentally challenged.

>> According to the police report, the [petitioner] and a friend of his approached Lynn in the laundry room of her apartment complex and greeted her by name and she assumed she knew them.  They all went to her apartment.  After much coaxing, [petitioner] convinced Lynn to agree to leave with him and the other man to go to the liquor store.  They went to the store and bought some alcohol.  Lynn had repeatedly said that she did not want to go but she felt she should.  After they went to the store Lynn was frightened and repeatedly said that she wanted to go back home.

>> The [petitioner] drove her to a field by the Redding Airport.  [Petitioner] started talking to Lynn and trying to convince her to have sex with him.  She repeatedly told him that she did not want to.  Lynn made up excuses to avoid having sex, for example, by stating that she was on her period.  Lynn felt very scared and wanted to scream and run away but thought no one would be able to hear her.

6

The other man took a flashlight and went for a walk. Both [petitioner] and Lynn were standing outside of the car. The [petitioner] told Lynn to take her clothes off. Lynn felt like she had to or the [petitioner] would hurt her, so she removed her pants and underwear. Lynn kept telling the [petitioner] no, but he told her to lay down on the ground and began to get rough with her. He then put . . . his penis inside of her, and it hurt her a lot because he was so rough. [Petitioner] . . . began to fondle her breasts and Lynn told him to stop. [Petitioner] stopped. He repeatedly attempted to fondle her breasts, but Lynn kept telling him to stop and he would.

Afterward the other man returned and the [petitioner] drove Lynn back to her house. Although Lynn was scared and frightened, she did not say that the [petitioner] threatened her with any harm. Lynn was examined by a doctor who confirmed that she suffered no injuries.

The [petitioner] plead guilty to having violated [section 261, subd. (a)(1)] which defines rape under these circumstances as an act of sexual intercourse accomplished with a person not the spouse of the perpetrator where a person is incapable because of a mental disorder or developmental disability of giving legal consent.

For this crime the [petitioner] was punished."

Evidence Code section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] [s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code] [s]ection 352."

Evidence Code section 352 gives the trial court discretion to exclude evidence, including evidence otherwise admissible under Evidence Code section 1108, if the probative value of the evidence is "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

We review the trial court's ruling for an abuse of discretion. (People v. Frazier (2001) 89 Cal.App.4th 30, 42.) "The trial court enjoys broad discretion under Evidence Code section 352 in determining whether the probative value of particular evidence is

7

outweighed by concerns of undue prejudice, confusion or
consumption of time and this discretion is built into Evidence Code
section 1108, subdivision (a).  The exercise of this statutory
discretion will not be disturbed on appeal '"except on a showing
that the trial court exercised its discretion in an arbitrary,
capricious or patently absurd manner that resulted in a manifest
miscarriage of justice." . . .'"  (<u>People v. Frazer</u>, <u>supra</u>, 89
Cal.App.4th at p. 42, fn. omitted.)

By discussing only the differences between the current offenses
and the prior offense, [petitioner] attempts to establish that
admission of the prior conduct evidence was an abuse of
discretion.  He asserts:  "[T]he rape case involved a one-time act of
sexual intercourse with a 24-year-old adult developmentally
disabled woman outdoors in a field near an airport.  [Citation.]  [¶]
The charged and uncharged acts were dissimilar in almost every
respect.  The nature of the acts, settings, and ages and genders of
the complaining witnesses in the two were markedly different."
Based on this summary of the differences, [petitioner] asserts the
evidence of the prior rape did not logically tend to support the
convictions in the current case.

Contrary to [petitioner's] approach, we do not look solely at the
differences between the prior and current conduct in determining
whether the evidence of the prior conduct is admissible.  When the
trial court ruled in favor of the prosecution, it reasoned that, in the
prior rape and the current offenses, [petitioner] exploited the
vulnerability of victims who were unable to resist.  He placed them
in situations in which they had no protection from him.  Based on
these similarities, the trial court found that the evidence of the prior
rape was probative and that prejudice, possible confusion of the
jury, and consumption of time did not substantially outweigh the
probative value.  We agree with the trial court for the same
reasons.  Although there were several differences between
[petitioner's] prior rape and the current offenses, the similarities
were sufficient to show [petitioner's] propensity for committing
sexual crimes against particularly vulnerable victims.  Accordingly,
the trial court did not abuse its discretion.

When a trial court properly admits prior sexual offense evidence
pursuant to Evidence Code sections 352 and 1108, the admission
of the evidence does not violate constitutional due process and fair
trial rights.  (<u>People v. Falsetta</u> (1999) 21 Cal.4th 903, 910-922.)
Because we find no abuse of discretion in admitting the evidence
of the prior rape, we also conclude the admission of the evidence
did not violate [petitioner's] constitutional due process and fair
trial rights.

(LD 1 at 4-8.)

////

8

1          Petitioner contends that admission into evidence that petitioner had raped a 24-

2   year-old developmentally-disabled woman violated petitioner's due process rights.[4]   However,

3   the United States Supreme Court "has never expressly held that it violates due process to admit

4   other crimes evidence for the purpose of showing conduct in conformity therewith, or that it

5   violates due process to admit other crimes evidence for other purposes without an instruction

6   limiting the jury's consideration of the evidence to such purposes."  Garceau v. Woodford, 275

7   F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S.

8   202 (2003).  In fact, the Supreme Court has expressly left open this question.  See Estelle v.

9   McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on

10   whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes'

11   evidence to show propensity to commit a charged crime").  See also Mejia v. Garcia, 534 F.3d

12   1036, 1046 (9th Cir. 2008), cert. denied, 129 S. Ct. (2009) (state court was not objectively

13   unreasonable in determining that the propensity evidence introduced against the defendant did

14   not violate his right to due process); Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006),

15   cert. denied, 549 U.S. 1287 (2007) (rejecting claim that the introduction of propensity evidence

16   violated due process rights under the Fourteenth Amendment because "the right [petitioner]

17   asserts has not been clearly established by the Supreme Court, as required by AEDPA"); United

18   States v. LeMay, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of

19   evidence of similar crimes in child molestation cases, under which the test for balancing

20   probative value and prejudicial effect remains applicable, does not violate the Due Process

21   Clause).  Accordingly, the state court's decision rejecting this claim is not contrary to United

22   States Supreme Court precedent.

23   ////

24

25        [4]  The parties entered into a stipulation describing the nature of the prior sexual offense;
    the court informed the jury that the evidence in the stipulation was submitted for a limited
26   purpose, and then the stipulation was read to the jury.  (2 RT 435-37.)

1          Moreover, any error in admitting this propensity evidence in petitioner's case did

2  not have "a substantial and injurious effect or influence in determining the jury's verdict."

3  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).  The record reflects that the state trial judge

4  struck an appropriate balance between petitioner's rights and the intent of the California

5  legislature that evidence of prior similar acts be admitted in sexual offense prosecutions.  The

6  trial court held a hearing on petitioner's motion in limine to exclude prior sexual offense

7  evidence.  (1 RT at 35-44; CT at 70.)  As noted by the appellate court, the trial court concluded

8  the prior sexual offense was "probative of the [petitioner's] disposition to exploit vulnerable

9  others, whether it's vulnerability based on youth or developmental disability."  (1 RT 44.)  The

10  judge found the prior offense was not remote in time, was not inflammatory, and was "not likely

11  to take undue consumption of time."  (1 RT 44.)  The trial court instructed the jury at the close of

12  the evidence as follows:

> 13  The People presented evidence that [petitioner] committed the
> 14  crime of Rape of a Person Unable to Give Legal Consent that was
> not charged in this case.  This crime is defined for you in the
> 15  stipulation, People's Exhibit 1.
>
> 16  From this evidence, you may, but are not required to, conclude
> from that evidence that the [petitioner] was disposed or inclined to
> 17  commit sexual offenses, and based on that decision, also conclude
> that the [petitioner] was likely to commit and did commit the
> 18  offenses charged here.  This evidence is only one factor to consider
> along with all the other evidence.  It is not sufficient by itself to
> 19  prove that the [petitioner] is guilty of the offenses charged here.
> The People must still prove each element of every charge beyond a
> 20  reasonable doubt.
>
> 21  Do not consider this evidence for any other purpose except for the
> limited purpose of determining the [petitioner's] credibility.

22  (CT at 155.)

23          This instruction did not compel the jury to draw an inference of propensity; it

24  simply allowed it.  The jury instructions, viewed in their entirety, correctly informed petitioner's

25  jury that the prosecution had the burden of proving all elements of the crimes against petitioner

26  beyond a reasonable doubt.  (<u>See</u> <u>e.g.</u>, CT at 137, 145, 154.)  Finally, the jury was instructed to

1 | limit their consideration of this evidence to determining petitioner's credibility.

2 |     Further, "[n]othing in the text of California Evidence Code § 1108 suggests that

3 | the admissible propensity evidence would be sufficient, by itself, to convict a person of any

4 | crime.  Section 1108 relates to admissibility, not sufficiency." Schroeder v. Tilton, 493 F.3d

5 | 1083, 1088 (9th Cir. 2007) (admission of evidence of defendant's prior sex crimes did not violate

6 | Ex Post Facto Clause).

7 |     Although the prior crimes evidence was potentially powerful, "[the fact] that prior

8 | acts evidence is inflammatory is not dispositive in and of itself." LeMay, 260 F.3d at 1030.  In

9 | any event, the prior act evidence here was not nearly as inflammatory as the allegations against

10 | petitioner involving the victims in this case.  "In sum, § 1108 creates an exception to the general

11 | ban on propensity evidence, so that evidence of prior sexual misconduct may be presented to the

12 | jury to demonstrate propensity to commit the crime charged, provided that the prejudicial value

13 | of that evidence does not substantially outweigh its probative value." Schroeder, 493 F.3d at

14 | 1087.  That was the case here.

15 |     Therefore, for all of the above reasons, petitioner is not entitled to relief on his

16 | first claim.

17 |     B.  Jury Instruction on Propensity Evidence

18 |     Petitioner claims the trial court violated his constitutional rights when it instructed

19 | the jury on how to evaluate evidence of another sexual offense using the jury instruction

20 | CALCRIM No. 1191.  Petitioner relies on Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004),

21 | overruled on other grounds by Byrd v. Lewis, 566 F.3d 855, 866 (9th Cir. 2009).

22 |     The last reasoned rejection of this claim is the decision of the California Court of

23 | Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

24 | this claim as follows:

25 |     [Petitioner] claims that the jury instruction given concerning the prior rape evidence, Judicial Council of California Criminal Jury

26 | Instructions (2006-2007), CALCRIM No. 1191, violated his due

process rights because it allowed the jurors to infer guilt in the current offenses from the fact that he committed the prior rape. We disagree.

The court instructed the jury as follows: "From [the prior rape] evidence you may, but are not required to, conclude from that evidence that the [petitioner] was disposed or inclined to commit sexual offenses, and based on that decision also conclude that the [petitioner] was likely to commit and did commit the offense charged here. This evidence is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the [petitioner] is guilty of the offenses charged here. The People must still prove each element of every charge beyond a reasonable doubt. Do not consider this evidence for any other purpose except for the limited purpose of determining the defendant's credibility."

As [petitioner] acknowledges, his contention that the language of this instruction violated his due process rights was rejected by the California Supreme Court in People v. Reliford (2003) 29 Cal.4th 1007, 130 Cal.Rptr.2d 254, 62 P.3d 601. Although the instruction considered in Reliford was the older CALJIC No. 2.50.01, there is no material difference in the manner in which each of the instructions allows the jury to conclude from the prior conduct evidence that the [petitioner] was disposed to commit sexual offenses and, therefore, likely committed the current offenses. CALCRIM No. 1191, as given here, cautions the jury that it is not required to draw these conclusions and, in any event, such a conclusion is insufficient, alone, to support a conviction. Based on Reliford, we therefore reject [petitioner's] contention that the instruction violated his due process rights.

[Petitioner] also contends the instruction violated his due process rights because prior rape evidence admitted at trial did not tend, logically, to prove [petitioner] committed the current offenses. He bases this contention on the flawed reasoning that the prior rape and the current offenses were dissimilar. We disagree that the prior rape of a developmentally disabled woman and the current offenses were as dissimilar as [petitioner] would have us believe. The fact that [petitioner] committed a sexual offense on a particularly vulnerable victim in the past logically tends to prove he did so again with respect to the current offenses. We therefore reject this argument.

People v. Cromp, 153 Cal.App.4th at 479-80.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element of a charged offense beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). If the jury is not properly instructed that a defendant is presumed innocent

12

1   until proven guilty beyond a reasonable doubt, then the defendant has been deprived of due

2   process.  See Middleton v. McNeil, 541 U.S. 433, 436 (2004).  Any jury instruction that

3   "reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly

4   inconsistent with the constitutionally rooted presumption of innocence."  Cool v. United States,

5   409 U.S. 100, 104 (1972).  In Gibson, the Ninth Circuit found that a 1996 California jury

6   instruction which provided for the admission of propensity evidence in sexual assault cases was

7   unconstitutional because it allowed the jury to convict the defendant without proof beyond a

8   reasonable doubt.  Id., 387 F.3d at 822.  The court held that the two instructions together,

9   CALJIC No. 2.50.01 and CALJIC No. 2.50.1, allowed for the jury to find by a preponderance of

10  the evidence that the defendant committed the prior uncharged offense, allowed the jury to infer a

11  predilection for sexual offenses from the prior offense, and then infer guilt on the charged offense

12  based on that predilection.  Id.  The court found that the instructions, by allowing the jury to infer

13  guilt based only on evidence proven by a mere preponderance, violated the Winship "maxim that

14  a defendant may not be convicted except 'upon proof beyond a reasonable doubt of every fact

15  necessary to constitute the crime.'"  Id. at 822 (citing Winship, 397 U.S. at 364).

16          The model jury instructions were amended in 1999 to state that a finding that the

17  defendant committed the prior offense by a preponderance was not sufficient by itself to prove

18  beyond a reasonable doubt that the defendant committed the charged offenses.  CALJIC No.

19  2.50.01 (7th ed. 1999).  The instructions were further amended in 2002 to clarify that any

20  inference the jury draws from the propensity evidence is but one item to be considered among all

21  the evidence in determining guilt beyond a reasonable doubt.  CALJIC No. 2.50.01 (8th ed.

22  2002).  The California Supreme Court upheld the 2002 version of the instructions, finding the

23  language to be constitutional.  People v. Reliford, 29 Cal.4th 1007, 1016, 130 Cal.Rptr.2d 254

24  (2003) (holding that the 2002 instructions did not allow the jury to rely on propensity evidence

25  proven by a preponderance standard to convict on the charged offenses).

26          The language in CALCRIM No. 1191, and given here, includes all of the revisions

1  made in 1999 and 2002 to the 1996 instructions and does not suffer from the defects highlighted

2  in Gibson.  People v. Schnabel, 150 Cal.App.4th 83, 87, 57 Cal.Rptr.3d 922 (2007) (citing

3  Reliford, 29 Cal.4th at 1012-16).  The court's instructions to the jury in this case did not allow the

4  jury to find that petitioner committed the rape of a person unable to give legal consent by a

5  preponderance of the evidence, and then infer that he committed the charged offenses based

6  solely upon the prior rape, as was the case in Gibson under the old 1996 instructions.  Id., 387

7  F.3d at 822.  Instead, the court informed the jury of the requirement that a conclusion that the

8  petitioner committed the prior rape "is only one factor to consider along with all the other

9  evidence."  (CT at 155.)  The court instructed the jury that this propensity evidence was not

10  sufficient by itself to prove petitioner was guilty of the charged offenses.  (Id.)  The jury was

11  instructed that the "People must still prove each element of every charge beyond a reasonable

12  doubt."  (Id.)  Finally, the court limited the jury's use of this evidence to impeachment:  "Do not

13  consider this evidence for any other purpose except for the limited purpose of determining

14  [petitioner's] credibility."  (Id.)  The jury was separately instructed that evidence admitted for a

15  limited purpose must be used "only for that purpose and no other."  (CT 149.)  The jury is

16  presumed to have followed its instructions.  See Weeks v. Angelone, 528 U.S. 225, 226 (2000)

17  (juries are presumed to follow instructions).

18          The trial court's instructions in this case reasonably comported with the due

19  process requirement that the government prove every fact necessary to convict petitioner beyond

20  a reasonable doubt, satisfying Winship.  Therefore, petitioner fails to show that the court's

21  instructions to the jury relating to the propensity evidence were contrary to, or an unreasonable

22  application of, clearly established federal law.  Accordingly, petitioner's second claim for relief

23  should be denied.

24  ////

25  ////

26  ////

14

C.  <u>Alleged Cruel and Unusual Punishment</u>

Petitioner claims his 180-year prison sentence is a de facto term of life without the possibility of parole and is disproportionate, in violation of the Eighth Amendment.

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> In his statement in mitigation, [petitioner] asserted the trial court needed to find a way, such as by striking the prior conviction, to reduce [petitioner's] sentence so that it did not violate constitutional cruel and unusual punishment proscriptions.  On appeal, [petitioner] amplifies his argument.  Characterizing his sentence as a "de facto term of life without the possibility of parole" and complaining that it leaves "no realistic hope of surviving and serving the 153 years" to become eligible for parole, [petitioner] argues the 180-years-to-life sentence is cruel and unusual and violates the federal and state Constitutions.  The argument is unconvincing.
>
> A.  Federal Constitution
>
> A punishment is cruel and unusual under the United States Constitution if it involves the "unnecessary and wanton infliction of pain" or if it is "grossly out of proportion to the severity of the crime."  (<u>Gregg v. Georgia</u> (1976) 428 U.S. 153, 173 [49 L.Ed.2d 859, 874-875].)  [Petitioner] argues that his sentence of 180 years to life for multiple counts of child molestation is grossly disproportionate to the crimes.  He states that there is no reasonable probability that he will be able to serve the full term and, therefore, his sentence must be reduced.  As discussed below (because it is really an argument under the State Constitution), this argument lacks any binding authority, and we have previously rejected it.
>
> B.  State Constitution
>
> "A tripartite test has been established to determine whether a penalty offends the [state] prohibition against cruel and unusual punishment.  First, courts examine the nature of the offense and the offender, 'with particular regard to the degree of danger both present to society.'  Second, a comparison is made of the challenged penalty with those imposed in the same jurisdiction for more serious crimes.  Third, the challenged penalty is compared with those imposed for the same offense in other jurisdictions.  [Citations.]"  (<u>People v. King</u> (1993) 16 Cal.App.4th 567, 572.)  The [petitioner] bears the burden of establishing that the

1    punishment prescribed for his offense is unconstitutional under this
     test. (<u>Ibid.</u>)
2
3        Instead of arguing that his sentence violates the state's
     proscription on cruel and unusual punishment under the tripartite
     test, [petitioner] encourages us to adopt a different approach.  His
4    argument is based on a concurring opinion of the late Justice
     Stanley Mosk. (<u>People v. Deloza</u> (1998) 18 Cal.4th 585, 600-602
5    (conc. opn. of Mosk, J.).)  Justice Mosk, writing alone, opined that
     imposing a sentence that the defendant cannot possibly serve, such
6    as the term of 180 years to life in this case, is unconstitutionally
     excessive. (<u>Ibid.</u>)  As [petitioner] fails to note, we have disagreed
7    with Justice Mosk's concurrence in <u>Deloza</u>, which concurrence has
     no binding effect on us. (<u>People v. Byrd</u> (2001) 89 Cal.App.4th
8    1373, 1383.)

9        Other than positing his "de facto term of life without the
     possibility of parole" theory, [petitioner] makes no attempt to
10   establish that the sentence was cruel and unusual under the test
     noted above.  Since he bears the burden of establishing a violation
11   of the constitution and he proffers as his sole argument one that we
     have previously rejected, we need not consider further his
12   contention that the sentence is cruel and unusual.

13       In any event, the sentence does not violate the state Constitution,
     using the tripartite test.  First, despite [petitioner's] argument that
14   he has not injured anyone in his various sexual assaults, he is a
     predator who is a danger to society and not only deserves
15   imprisonment but is appropriately removed from access to other
     vulnerable victims.  Second, the sentence is not greater than those
16   imposed for more serious crimes.  Lewd and lascivious conduct
     against a child is a violent felony ([Cal. Penal Code] § 667.5, subd.
17   (c)(6)), and repeat offenders are properly punished more severely
     than first-time offenders (<u>People v. Martinez</u> (1999) 71
18   Cal.App.4th 1502, 1512.)  third and finally, [petitioner] offers no
     comparison to punishment for the same crime in other
19   jurisdictions.

20   (LD 1 at 10-13.)

21       Successful challenges to the proportionality of particular sentences are

22   "exceedingly rare."  <u>Solem v. Helm</u>, 463 U.S. 277, 289-90 (1983).  "The Eighth Amendment

23   does not require strict proportionality between crime and sentence.  Rather, it forbids only

24   extreme sentences that are 'grossly disproportionate' to the crime."  <u>Harmelin v. Michigan</u>, 501

25   U.S. 957, 1001 (1991) (Kennedy, J., concurring) (citing <u>Solem</u>).  <u>See also</u> <u>Lockyer v. Andrade</u>,

26   538 U.S. 63, 77 (2003) (two consecutive twenty-five years to life sentences with the possibility

                                        16

1   of parole did not amount to cruel and unusual punishment); <u>Ewing v. California</u>, 538 U.S. 11

2   (2003) (holding that a sentence of twenty-five years to life imposed for felony grand theft under

3   California's Three Strikes law did not violate the Eighth Amendment); <u>United States v. Bland</u>,

4   961 F.2d 123, 128 (9th Cir. 1992) (upholding a life sentence without possibility of parole for

5   being a felon in possession of a firearm where defendant had an extensive criminal record).[5]

6           The instant case does not present an "exceedingly rare" and "extreme" case where

7   the sentence runs afoul of Eighth Amendment law as established by the Supreme Court of the

8   United States.  Petitioner was convicted of multiple counts of lewd and lascivious acts with two

9   different victims under the age of 14.  In view of the decisions noted above, petitioner's sentence

10   is not grossly disproportionate to this crime.  <u>See</u> <u>Harmelin</u>, 501 U.S. at 1004-05 (life

11   imprisonment without possibility of parole for possession of 24 ounces of cocaine raises no

12   inference of gross disproportionality).  Accordingly, petitioner is not entitled to relief on his

13   Eighth Amendment claim.

14           The state court's rejection of petitioner's third claim for relief was neither contrary

15   to, nor an unreasonable application of, controlling principles of United States Supreme Court

16   precedent.  Therefore, petitioner's third claim for relief should be denied.

17           D.   <u>Consecutive Sentences</u>

18           Petitioner claims that his constitutional rights were violated because the jury

19   failed to make factual findings required to impose consecutive sentences under California's

20   Three Strikes Law.  Petitioner relies on <u>Cunningham v. California</u>, 549 U.S. 270 (2007) (finding

21   California's determinate sentencing law unconstitutional).

22   ////

23   ////

24

25       [5] Petitioner also claims that his sentence violated his rights under the California
Constitution.  That claim is not cognizable in this action as federal habeas corpus relief is
available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding
26   on the state courts.  <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985).

1          The last reasoned rejection of this claim is the decision of the California Court of

2   Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

3   this claim as follows:

4          In his opening statement, [petitioner] argued that the imposition
       of consecutive terms was unconstitutional because the trial court,
5      rather than a jury, made the factual findings upon which the court
       based its decision to sentence [petitioner] consecutively.  After the
6      United States Supreme Court decided <u>Cunningham v. California</u>
       (2007) 549 U.S. ____ [166 L.Ed.2d 856] (<u>Cunningham</u>),
7      [petitioner] filed a supplemental brief asserting that case requires
       reversal.  We disagree.

8
          At sentencing, the parties discussed with the trial court the
9      statutory requirements with respect to consecutive sentencing.
       Acknowledging that, in order to sentence consecutively, the trial
10     court would have to find the offenses were committed on separate
       occasions, the court found that the facts supported consecutive
11     sentences and, therefore, imposed the terms consecutively.
       Defense counsel objected that imposition of consecutive sentences
12     required jury findings.

13         <u>Cunningham</u> does not require that factual findings supporting
       imposition of consecutive sentences be made by a jury.  That case
14     dealt with imposing the upper term under the California
       determinate sentencing law and did not address the situation in
15     which the court imposes consecutive sentences.  (<u>People v. Ybarra</u>
       (2007) 149 Cal.App.4th 1175 [holding that <u>Cunningham</u> did not
16     overrule <u>People v. Black</u> (2005) 35 Cal.4th 1238, 1244, on issue of
       consecutive sentencing].)  Section 669 requires the trial court to
17     determine whether concurrent or consecutive sentencing was
       appropriate.  It does not provide for a presumption in favor of
18     concurrent sentencing.  Therefore, the court's imposition of
       consecutive sentences based on its own factual findings, pursuant
19     to sections 667.61 and 1170.12, did not violate [petitioner's] fair
       trial and due process rights.

20

21   (LD at 13-14.)

22         The appellate court's decision is not contrary to, or an unreasonable application

23   of, clearly established federal law.  The Supreme Court has held that, when a defendant has been

24   convicted of multiple offenses, that defendant is not entitled to a jury determination of any facts

25   necessary to the imposition of consecutive sentences.  <u>Oregon v. Ice</u>, 555 U.S. 160, 129 S. Ct.

26   711, 714-15 (2009).  Historically, the decision to impose consecutive sentences was not a jury

1  function.  Id. at 717 ("The decision to impose sentences consecutively is not within the jury

2  function 'that extends down centuries into the common law.'  Instead, specification for the

3  regime for administering multiple sentences has long been considered the prerogative of state

4  legislatures.")  The Supreme Court rejected the argument that the constitutional right to a jury

5  trial is applicable because a state law may require predicate reasons before consecutive sentences

6  may be imposed.  Id. at 718.  Therefore, the trial court's imposition of consecutive sentences did

7  not violate petitioner's constitutional rights, and petitioner's fourth claim should  be denied.

8  VI.  Conclusion

9          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

10  a writ of habeas corpus be denied.

11          These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

13  one days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

16  objections, he shall also address whether a certificate of appealability should issue and, if so, why

17  and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

18  the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

19  § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after

20  service of the objections.  The parties are advised that failure to file objections within the

21  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

22  F.2d 1153 (9th Cir. 1991).

23  DATED:  March 14, 2011

24                                          KENDALL J. NEWMAN
                                           UNITED STATES MAGISTRATE JUDGE

25

26  crom1822.157

19